DCP:MEB/AS
F. #2018R01023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against – | Cr. No. 21-14 (ENV) |
| | (T. 18, U.S.C., §§ 982(a)(1), 982(b)(1), |
| DANIEL COMORETTO GOMEZ, | 1956(h) and 3551 et seq.; T. 21, U.S.C., |
| Defendant. | § 853(p)) |

- - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise stated:

I.      The Defendant and Relevant Entities

1.      Petroleos de Venezuela S.A. ("PDVSA") was a Venezuelan state-owned

and state-controlled oil company.  PDVSA and its subsidiaries and affiliates were responsible for

exploration, production, refining, transportation and trade in energy resources in Venezuela.

PDVSA supplied asphalt, among other products, to companies around the world, and also

provided funding for various operations of the Venezuelan government.  PDVSA and its wholly-

owned subsidiaries were "instrumentalities" of the Venezuelan government, as that term is

defined in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections

78dd-1 et seq.  PDVSA officers and employees were "foreign officials," as that term is defined

in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).

2.      Asphalt Company, the identity of which is known to the United States,

was an asphalt company headquartered in Puerto Rico that operated primarily in Latin America

and the Caribbean.  Asphalt Company was a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

3.     Sargeant Marine Inc. was a company incorporated and based in the United States that stored, transported and traded asphalt.  Sargeant Marine Inc. was one of the largest asphalt providers in the world and had several affiliates and joint ventures that traded asphalt internationally (together, "Sargeant Marine").  Sargeant Marine Inc. was a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

4.     The defendant DANIEL COMORETTO GOMEZ ("COMORETTO") was a dual citizen of Venezuela and Italy and, since in or about September 2018, a lawful permanent resident of the United States.  COMORETTO was a manager at PDVSA involved in the trading of asphalt in or about and between at least 2010 and 2012.  During that time, COMORETTO was a "foreign official," as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).

5.     Hector Nuñez Troyano ("Troyano") was a dual citizen of Spain and Venezuela.  Troyano was an employee at PDVSA in or about and between 2008 and February 2015, and was involved in the sale of PDVSA asphalt.  During that time, Troyano was a "foreign official," as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).  Troyano was supervised by the defendant DANIEL COMORETTO GOMEZ in or about and between 2010 and 2013.

6.     David Diaz ("Diaz") was a citizen of Venezuela and, as of approximately 2014, a naturalized U.S. citizen.  From in or about and between 2011 and December 2017, Diaz worked as an agent for Sargeant Marine and Asphalt Company.  Diaz was a "domestic concern"

2

and an "agent" of a "domestic concern," as those terms are defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

7.      Asphalt Company Executive, an individual whose identity is known to the United States, was a citizen of the United States who worked as a principal of Asphalt Company. Asphalt Company Executive was a "domestic concern" and an "agent" of a "domestic concern," as those terms are defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

II.      The Bribery and Money Laundering Scheme

8.      In or about and between 2011 and October 2015, the defendant DANIEL COMORETTO GOMEZ agreed with Troyano, Diaz, Asphalt Company Executive and, later, several employees of Sargeant Marine, to participate in a scheme in which COMORETTO and Troyano would receive bribes, facilitated by Diaz, from Asphalt Company and, later, Sargeant Marine, in order to assist those companies in obtaining contracts to purchase asphalt from PDVSA.

9.      In or about 2011, the defendant DANIEL COMORETTO GOMEZ, Troyano and Diaz traveled to Puerto Rico to meet with Asphalt Company Executive and other executives of Asphalt Company.  During that trip it was agreed that Asphalt Company Executive, with the help of Diaz, would pay bribes to COMORETTO and Troyano to assist Asphalt Company in winning term contracts to purchase asphalt from PDVSA.  In or about 2012, COMORETTO, Troyano, Diaz and others agreed to a similar arrangement with Sargeant Marine.

10.      In furtherance of the scheme, in or about and between 2011 and 2015, Asphalt Company and Sargeant Marine paid Diaz a commission of approximately 45 cents for

every barrel of asphalt that either Asphalt Company or Sargeant Marine purchased from PDVSA. Diaz in turn used a portion of his commissions to pay bribes to the defendant DANIEL COMORETTO GOMEZ, Troyano and others.

11.     To promote and conceal the bribery scheme, payments to the defendant DANIEL COMORETTO GOMEZ, Troyano and others involved in the scheme were sometimes paid to or through bank accounts held by shell companies belonging to Diaz and Troyano.  In or about and between approximately September 2013 and January 2015, Diaz wired a total of approximately $518,000 in payments to COMORETTO and Troyano on behalf of Asphalt Company and Sargeant Marine.  Diaz wired such payments from accounts that Diaz controlled in the United States and Panama to Panamanian bank accounts held in the name of a shell company controlled by Troyano.  Troyano in turn wired a portion of those payments to a bank account in the United States controlled by COMORETTO.

12.     In or about and between April 2012 and September 2014, Troyano and Diaz wired a total of approximately $229,000 in bribes to the defendant DANIEL COMORETTO GOMEZ.  Troyano and Diaz made the majority of the payments using bank accounts located outside the United States, specifically in Panama, and, following transfers between bank accounts held by Troyano in Panama, the bribes were wired into an account that COMORETTO held at Bank of America in the United States to promote and conceal the scheme. Approximately 22 of these wires were sent through bank accounts located in New York, New York, which payments passed through the Eastern District of New York.

Case 1:21-cr-00014-ENV   Document 16   Filed 01/27/21   Page 5 of 7 PageID #: 68

## CONSPIRACY TO COMMIT MONEY LAUNDERING

13.     The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14.     In or about and between 2011 and October 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL COMORETTO GOMEZ, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States:

(a)     with the intent to promote the carrying on of one or more specified unlawful activities, to wit: felony violations of the FCPA, in violation of Title 15, United States Code, Sections 78dd-2 and 78dd-3 (the "Specified Unlawful Activities"), contrary to Title 18, United States Code, Section 1956(a)(2)(A); and

(b)     knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of one or more specified unlawful activities, to wit: the Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

5

<u>CRIMINAL FORFEITURE ALLEGATION</u>

15.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

16.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

6

property of the defendant up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))


*Seth D. DuCharme*

SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


*Daniel S. Kahn*

DANIEL S. KAHN
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

7